DOHERTY v. PEAL, PEACOCK & KERR, Incorporated.

(Supreme Court, Appellate Term. December 13, 1898.)

1. DEMURRAGE—WHEN ALLOWED.
     Where a shortage in a cargo of coal was due to the carrier's negligence, the shipper cannot be held for demurrage due to delay in arriving at a new agreement with the consignee for the acceptance of the short cargo at its actual weight.

2. COUNTERCLAIM—REVIEW—INADEQUATE JUDGMENT.
     A judgment allowing a counterclaim for coal lost by plaintiff's negligence at an amount considerably less than the testimony showed the coal to be worth will be reversed.

Appeal from municipal court, borough of Manhattan, First district.

Action by Patrick H. Doherty against Peal, Peacock & Kerr, Incorporated, for the conveyance of a cargo of coal. Defendant filed a counterclaim, and from a judgment in its favor it appeals. Reversed, and new trial ordered.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Frank D. Peale, for appellant.
Hyland & Zabriskie, for appellee.

GILDERSLEEVE, J.  The plaintiff is the owner of the canal boat Lewis Stewart. The defendant is a foreign corporation. On or about the 27th day of October, 1896, at Elizabethport, N. J., the defendant shipped on said boat a cargo of coal of 224½ tons, according to the bill of lading and the evidence of the defendant's witnesses. This cargo was consigned to Tinsley & Co., of New York City, and the place of consignment was the dock of Tinsley & Co., Mott Haven Canal. It was agreed that the freight should be 22 cents a ton, making a total for such freight of $49.39, upon which a credit was allowed of $6.74. It was also agreed that the demurrage should be at the rate of $3 a day after 4 lay days. In his complaint the plaintiff claims $42.65 for freight, and $36 for demurrage, to wit, $3 a day for 12 days; but on the trial he reduced his claim to 10 days' demurrage, making his total claim $72.65. On October 28, 1896, the captain of the boat reported its arrival in the mouth of the Mott Haven Canal to the consignees, and offered to them the bill of lading. The consignees, however, declined to accept it until the boat had arrived at the place of consignment, and told the captain to bring his boat to the dock. The captain was taken sick that day, and the boat remained at the mouth of the canal overnight without a keeper. On the following day, i. e. October 29, 1896, another captain was put on board, and reported to the consignees. The latter looked at the cargo, and declined to accept it, on the ground that there was less coal than the 224½ tons consigned. The boat lay in the canal, some 200 or 300 feet from the dock or place of consignment, until November 5, 1896, when it was agreed between the consignor and the consignees that the latter should take the coal at the weight in the boat. The boat was then brought up to the dock, and the discharge commenced, which continued until November 10th, according to the defendant's witnesses, or November 11th, according to the captain's testimony. November 8th in that year fell on a Sunday. It does not seem to be disputed that the captain would have brought the boat to the place of consignment on October 29th, had the consignees allowed him to do so. As we have above stated, the demurrage was to commence after 4 lay days, and to be at the rate of $3 per day. The plaintiff, in his brief, apparently accepts the defendant's statement that the discharge was completed on November 10th, and he claims that the 4 lay days were October 28th, 29th, 30th, and 31st, and that demurrage is due for the 10 days from November 1st to November 10th, both inclusive. Defendant, on the other hand,

claims that the consignees were justified in refusing to accept the cargo previous to November 5th, and that the 4 lay days did not commence until said date. The evidence shows, as we have above stated, that the former captain offered the bill of lading to the consignees on October 28th, and that they refused to accept it for the reason that the boat had not yet reached its destination, the place of consignment. It further appears that, on the afternoon of the same day, it was reported to the consignees that the captain was sick, and that some one should be put in charge of the boat. The consignees immediately notified the consignor, who, in turn, immediately notified the plaintiff. Owing, as the justice has found, to the negligence of the plaintiff, the boat was left overnight without a keeper, and, during that time, 24.1 tons of coal were stolen. Under these circumstances, the consignees refused to accept the cargo on the basis stated in the bill of lading, which called for $224\frac{1}{2}$ tons. Some time was required, in order that the parties might arrive at a new agreement, which was rendered necessary by plaintiff's negligence. After considerable negotiation, this new arrangement was accepted on November 5th, and the cargo was discharged on November 10th. As there were four lay days to be deducted, before the demurrage commenced, these days, according to defendant's contention, were November 5th, 6th, 7th, and 9th, as the 8th was not a lay day. This leaves one day's demurrage, to wit, November 10th. The justice, having found that there was a loss of 24.1 tons of coal, for which plaintiff was responsible, offset defendant's counterclaim in amount equal to plaintiff's claim, and gave judgment for defendant for $25.47 costs. From this judgment the defendant appeals. It claims that it was entitled to the value of the coal, which is shown to be $109.88, less the freight on the amount of coal actually delivered to the consignees, amounting to $44.09, on which sum $6.74 is to be credited, leaving the amount due from plaintiff to defendant $72.53, with interest and costs. It is very clear that if the shortage of 24.1 tons of coal was due, as the justice has found, to the fault of the plaintiff, the defendant should not be held responsible for the delay in arriving at a new agreement, and the consequent claim for demurrage. Besides which, the testimony as to the value of the lost coal fixes the amount at a sum much larger than the $72.65 allowed by the justice, i. e. the amount of plaintiff's claim. The decision of the justice appears to be as follows, viz.: "Judgment for the defendant, as I am convinced that the shortage of coal is clearly chargeable to the plaintiff. I have offset the defendant's counterclaim in amount equal to plaintiff's claim. Ten dollars costs." The return, however, states the judgment to be for defendant in the sum of $25.47, "damages," and costs. The word "damages," however, is evidently unintentional, as the costs, disbursements, and prospective charges, as taxed, amount to the said sum of $25.47.

For the reasons above stated the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.